UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ZACHARY A. HOLMAN, #473131,                      Case No. 2:23-cv-56

               Plaintiff,                      Hon. Paul L. Maloney
                                                 U.S. District Judge

    v.

MICHAEL J. BALLARD and
JESSICA VELMER,

               Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R. & R.) addresses Defendant Velmer's motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies.  (ECF No. 29.)

Plaintiff — state prisoner Zachary A. Holman — filed suit pursuant to 42 U.S.C. § 1983 on March 31, 2023.  In his verified amended complaint, Holman asserts that while he was incarcerated at the Baraga Correctional Facility (AMF) in Baraga, Michigan, AMF Dentist Michael Ballard and AMF Dental Assistant Jessica Velmer acted with deliberate indifference to his serious medical needs.  (ECF No. 15, PageID.71.)  Specifically, Holman asserts that when he arrived at AMF in June of 2022, he began requesting a dental appointment to address cavities he had discovered prior to his transfer.  (*Id.*, PageID.63.)  But Holman was not seen until late December of 2022.  (*Id.*, PageID.66.)  He did not receive a cleaning until late March of 2023.

(*Id.*, PageID.69.)  And his cavities were not filled during either of those appointments. Holman says that he has since received "partial but incomplete medical care by a different dentist," but that he experiences tooth pain on a daily basis and that his teeth have deteriorated.  (*Id.*, PageID.70.)

Defendant Velmer now moves for summary judgment, asserting that Holman did not properly exhaust his administrative remedies.  (ECF No. 29.)  More specifically, Velmer argues that the only grievance that Holman pursued through Step III of the grievance process with respect to his dental care was rejected in accordance with Michigan Department of Corrections (MDOC) policy.  (ECF No. 30, PageID.141-142.)  In response, Holman argues that the rejection was improper.  (ECF No. 37, PageID.194.)  According to Holman, the grievance was rejected because he failed to include his Step II grievance response.  But Holman did not include the Step II grievance response because he did not receive the response in a timely fashion. (*Id.*)  Holman says that he was actually adhering to MDOC policy when he filed the Step III grievance appeal without the Step II grievance response.  (*Id.*)  Defendant Velmer asserts that Holman has not "provided any evidence to support his contention that he did not receive the Step II response."  (ECF No. 38, PageID.207.)

The undersigned respectfully recommends that Court deny Defendant Velmer's motion for summary judgment because there are genuine issues of material fact bearing on whether Holman's relevant Step III grievance appeal was improperly rejected, thereby rendering the grievance process unavailable with respect to his deliberate indifference claim.  MDOC policy provides that Step II grievance responses

shall be returned to the grievant within fifteen business days.  The record reflects that Holman submitted his Step II grievance appeal on December 20, 2022, and that he received the Step II response more than fifteen business days later on January 17, 2023.  In his verified amended complaint, Holman says that he filed his Step III grievance appeal on January 16, 2023 — after the response deadline had passed and before his receipt of the untimely Step II grievance response.  In contrast, Holman's Step III Grievance Report reflects that the Step III grievance appeal was received by MDOC staff on January 31, 2023 — well after the return of the Step II grievance response.  As such, in the undersigned's opinion, there are genuine issues of material fact precluding summary judgment.

## II.    Factual Allegations

Holman's factual allegations are straightforward.  He says that while he was incarcerated at the Ionia Correctional Facility (ICF) on or about March 9, 2022, he conducted a self-examination of his teeth.  (ECF No. 15, PageID.63.)  During that examination, Holman located multiple cavities.  Holman therefore requested an appointment with ICF dental services.  (*Id.*)  On March 11, 2022, Holman was informed that he was placed on a list for dental care.  Then, on or about June 15, 2022, Holman was transferred to AMF.  (*Id.*) Holman says that shortly after his transfer, he reached out to AMF dental services for an appointment.  AMF dental services informed Holman that he was already on a list to be seen.  (*Id.*)

On November 1, 2022, Holman says that he reached out to AMF dental services again, marking his communication as "urgent" and indicating that he had "multiple

cavities." (*Id.*, PageID.63-64.)  Defendant Velmer responded the same day, telling Holman that he was "already on the list." (*Id.*, PageID.64.)  Holman followed up with dental services on November 9, 2022, asking who was in charge of making and maintaining the dental waiting list, and who determined whether an inmate's dental issues were "urgent."  On November 21, 2022, Holman followed up again, this time addressing his communication directly to Velmer.  (*Id.*)  Holman again inquired as to how the dental waiting list was made and maintained, how many inmates were on the list, and where he fell on the list.  (*Id.*)  On November 28, 2022, Velmer responded by simply stating: "You are on the list and will be called out when you are next on the list." (*Id.*, PageID.65.)

On November 30, 2022, Holman sent another "urgent" communication to AMF dental services, indicating that his multiple cavities were causing him "daily pain."  On December 2, 2022, Holman filed a grievance complaining that he had been deprived of dental care for approximately nine months.  (*Id.*)  A few days later, on December 8, 2022, Velmer called Holman and told him that he had been placed on an emergency list, but that it would still be a few weeks before he was seen.  (*Id.*, PageID.65-66.)  Velmer then asked Holman a few questions about his teeth and told him that she could see cavities in his x-rays.  (*Id.*, PageID.66.)  On the same day, former-defendant Dr. Echols prescribed Holman ibuprofen.  And Holman's Step I grievance was denied.  (*Id.*)

On December 15, 2022, Holman says that he filed his Step II grievance appeal stating that his pain management was insufficient, and that additional delay in his

4

dental care was "undue."  Five days later, on December 20, 2022, Holman was called
to AMF's medical unit.  (*Id.*)  There, Holman spoke with Defendant Velmer about his
cavities, and about a molar that he wanted filed down.  (*Id.*, PageID.67.)  Velmer took
x-rays of Holman's mouth, and then called Dr. Ballard in to see Holman.

After Holman reiterated his concerns to Dr. Ballard, Dr. Ballard filed down the
molar that was bothering Holman.  (*Id.*, PageID.68.)  Dr. Ballard then allegedly asked
Holman whether he wanted the problem teeth removed.  (*Id.*, PageID.68.)  Holman
told Dr. Ballard he did not, and asked whether Ballard could simply fill his cavities.
Holman says that Dr. Ballard responded by stating that Holman "wasn't going to
jump the list for fillings" and that Holman should send in a request for a dental
cleaning.  (*Id.*)  Holman responded by indicating that he had put in multiple requests
for cleanings, and that he submitted the first request eight months ago.  Dr. Ballard
allegedly claimed that this was "impossible" and there was "no way they could be that
behind" but Velmer informed Dr. Ballard that they were in fact that behind on the
segregation list.  (*Id.*, PageID.67-68.)

 Dr. Ballard then asked Holman whether he had been in segregation since his
arrival.  (*Id.*, PageID.68.)  When Holman said he had, Dr. Ballard allegedly stated
that this was the reason Holman had not been seen.  Holman then asked Dr. Ballard
whether that meant he was receiving less care than inmates in general population.
(*Id.*)  In response, Dr. Ballard became angry, and ended the appointment.

Holman says that he did not receive a response to the Step II grievance appeal
filed December 15, 2022.  As such, he filed a Step III grievance appeal on January 16,

2023 "in accordance with MDOC's grievance policy." (*Id.*)  On March 15, 2023, Holman received the response to his Step III grievance.  His grievance was rejected because it did not contain the Step II response—but Holman reiterates that the Step II response was untimely, and that he did not receive the response until after he mailed his Step III grievance appeal.  (*Id.*)

On March 28, 2023, Holman says that he was seen by a non-party dental provider for a teeth cleaning, but that his cavities were not filled, and he was not provided with any pain relief.  He says that another dentist provided him with "partial but incomplete medical care" after his appointment with Dr. Ballard, and that he has "not been prescribed any consistant [sic] pain medication other than the initial prescription that ended on 12/14/22." (*Id.*, PageID.70.)  Holman says that he continues to experience tooth pain on a daily basis, and that his teeth have deteriorated.  (*Id.*)

## III.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one

---

1       If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.    Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly,

---

Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones*, 549 U.S. at 218) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

8

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive (P.D.) 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W.  The Policy Directive also provides the following directions for completing

9

grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC P.D. 03.02.130 at ¶¶ U, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ U, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative

remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").  However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.  *See id*. at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."  *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

## V.    Analysis

Defendant Velmer moves for summary judgment on the basis that the only grievance that Holman pursued through Step III of the grievance process with respect to his dental care was rejected in accordance with Michigan Department of Corrections (MDOC) policy.  (ECF No. 30, PageID.141-142.)  In response, Holman argues that the rejection was improper, as he was not provided with a timely Step II grievance response such that he could include it in his Step III grievance appeal. (ECF No. 37, PageID.194.)  In reply, Velmer reiterates that Holman's Step III grievance appeal was rejected for a legitimate reason, and that "Holman does not provide any evidence to support his contention that he did not receive the Step II response."  (ECF No. 38, PageID.207.)

As an initial matter, Holman does not contend that he never received a Step II grievance response.  Holman alleges in his verified amended complaint[3] that he did not receive a *timely* Step II grievance response, leading him to file a Step III grievance appeal without the response.  (ECF No. 15, PageID.69.)  He acknowledges that he received the Step II grievance response *after* filing his Step III grievance appeal.  (*Id.*)

---

[2]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

[3]    Significantly, Holman's verified amended complaint has "like force and effect" as a "sworn declaration, verification, certificate, statement, oath, or affidavit."  28 U.S.C. § 1746.

Furthermore, the record supports Holman's contention that the Step II grievance response was untimely.  The pertinent portions of Holman's relevant grievance appeal forms are shown below.

| Date Received by Grievance Coordinator at Step II: | Grievance Identifier: | A | M | F | 2 | 2 | 1 | 2 | | 1 | 8 | 7 | 7 | 1 | 2 | A | 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

_28e_

**INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE.
The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step II and Step III.

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: ___AMF___
___Grievance Office___ By _12/23/22_

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909.

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Holman | 473131 | AMF | 2-213 | | |

**STEP II — Reason for Appeal**

Pain Management insufficient, additional delay undue.

**STEP II — Response**

Date Received by Step II Respondent:

Date Returned to Grievant:

Respondent's Name (Print)    Respondent's Signature    Date

**STEP III — Reason for Appeal**
No response at Stage II. When I was seen by dentist I was told that he would not treat me at that time, regardless of pain. At this time no treatment has been given, & other (white) copy never returned.

(ECF No. 30-3, PageID.161.)

13



(ECF No. 30-4, PageID.170.)

Under MDOC P.D. 03.02.130, the due date for a Step II grievance response must be "within 15 business days after the receipt of the grievance, unless an extension is granted as set forth in Paragraph T." MDOC P.D. 03.02.130 at ¶ EE. "A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response *or does not receive a timely response.*" *Id.* at ¶ HH.

14

Holman's grievance records indicate that his Step II grievance appeal was received on December 20, 2022. They further indicate that the Step II grievance response was returned to Holman on January 17, 2023 — twenty business days later. While the grievance forms do not indicate when Holman filed his Step III grievance appeal, Holman asserts in his verified amended complaint that he filed the Step III grievance appeal on January 16, 2023. (ECF No. 15, PageID.69.) But Holman's Step III Grievance Report reflects that the Step III grievance appeal was received by MDOC staff on January 31, 2023. (ECF No. 30-3, PageID.157.) Accordingly, in the undersigned's opinion, there are genuine issues of material fact bearing on whether Holman's Step III grievance appeal was properly rejected. And when a grievance is improperly rejected, the grievance process is rendered unavailable with respect to the claims therein. *See, e.g.*, *Wilson v. Taskila*, No. 2:21-CV-236, 2022 WL 16745768, at *5 (W.D. Mich. Sept. 20, 2022) (citing *McDuff v. Addis*, No. 1:17-CV-912, 2018 WL 3239491, at *4 (W.D. Mich. July 3, 2018)) ("[W]hen the MDOC improperly rejects a grievance as concerning multiple unrelated issues, it renders the grievance process unavailable with respect to the claims therein."), *R. & R. adopted*, No. 2:21-CV-236, 2022 WL 16744819 (W.D. Mich. Nov. 7, 2022).

## VI.    Recommendation

The undersigned respectfully recommends that Court deny Defendant Velmer's motion for summary judgment (ECF No. 29) because there are genuine issues of material fact bearing on whether Holman's relevant Step III grievance appeal was improperly rejected, thereby rendering the grievance process unavailable

with respect to his deliberate indifference claim. MDOC policy provides that Step II grievance responses shall be returned to the grievant within fifteen business days. The record reflects that Holman submitted his Step II grievance appeal on December 20, 2022, and that he received the Step II grievance response more than fifteen business days later on January 17, 2023. In his verified amended complaint, Holman says that he filed his Step III grievance appeal on January 16, 2023 — after the response deadline had passed and before his receipt of the untimely Step II grievance response. In contrast, Holman's Step III Grievance Report reflects that the Step III grievance appeal was received on January 31, 2023 — well after the return of the Step II grievance response. As such, in the undersigned's opinion, there are genuine issues of material fact precluding summary judgment.

If the Court accepts this recommendation, Holman's deliberate indifference claim against Dr. Ballard and Dental Assistant Velmer will remain.

Dated:  January 24, 2024                    /s/ *Maarten Vermaat*
                                            MAARTEN VERMAAT
                                            U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).